[No. 27856.  *En Banc.*  January 4, 1940.]

SPOKANE COUNTY, *on the Relation of J. W. Sullivan et al., as County Commissioners of Spokane County, Respondents,* v. FRANK GLOVER, *as County Treasurer of Spokane County, Appellant.*[1]

[1]Reported in 97 P. (2d) 628.

*A. O. Colburn,* for appellant.

*Ralph E. Foley* and *Harvey Erickson,* for respondents.

STEINERT, J.—This action was instituted under the declaratory judgments act to obtain a construction of Rem. Rev. Stat. (Sup.), § 11245 (Laws of 1939, chapter 206, p. 763, § 41), and to determine the extent of the county treasurer's duties and obligations under that section of the statute. Upon a trial before the court, findings were made, conclusions were drawn, and a decree was entered declaratory of the court's construction of the statute and determining the extent of the treasurer's duties thereunder. The defendant treasurer has appealed.

There is no dispute as to the facts. Prior to 1939, the statute (Rem. Rev. Stat., § 11245 [P. C. § 6882-84]), so far as material here, provided:

". . . He [the treasurer] shall, *when requested,* notify each taxpayer in his county, at the expense of the county, having printed on said notice the name

of each tax and the levy made on the same, of the amount of his real and personal property, and the total amount of tax due on the same; . . ." (Italics ours.)

The 1939 legislature amended that provision of the statute by eliminating therefrom the words "when re-requested" so that it now reads:

"The Treasurer *shall* notify each taxpayer," etc. (Italics ours.)   Rem. Rev. Stat. (Sup.), § 11245.

The treasurer of Spokane county, being of the opinion that the provision of the statute as amended was mandatory and required him to notify each taxpayer in the county of the taxes due on his property, advised the county commissioners that he would at once employ such additional help and incur such additional expense as would enable him to compile a complete list of the taxpayers in the county; at the same time, he demanded of the commissioners that they provide him the necessary funds, estimated at ten thousand dollars.  The commissioners, being of the opinion that the expense was unnecessary and would simply be a waste of county funds, denied the request and, instead, commenced this action for judicial determination of the question involved.

The treasurer interprets the statute to mean, and now contends, that it is his mandatory duty to make a complete and exhaustive search of the records in the offices of the auditor, the clerk, and the assessor for the names and last known addresses of all owners of real and personal property in the county, and, if such search does not reveal the true owners and their addresses, to make further search in the vicinity of the property and among the taxpayer's friends and acquaintances; in other words, the treasurer contends that he must do everything possible every year to make and keep a complete, up-to-date, and authentic

list of all owners of real and personal property in the county, no matter where such owners reside or what interest in such property any taxpayer may have. He further interprets the statute to mean, and now contends, that, if every possible effort is not made to ascertain and notify the real owners and taxpayers in each instance, the courts may, as to those taxpayers who are not notified, hold that the levy is void, or that the taxes, when past due, shall not carry interest and penalties, or that any foreclosure proceeding brought thereon is invalid; and further, that, in the event of loss to the county in the manner just described, for his failure to send such notice or to make every possible effort to notify every taxpayer, he himself would be personally liable to the county for his neglect.

The commissioners, on the other hand, interpret the statute to mean, and now contend, that the duty of the treasurer is to send notices to those taxpayers only whose names and addresses appear on the tax rolls as they come to him or otherwise appear in the records of his own office, and that the statute as now amended is not mandatory, but merely directory.

The controversy here relates almost entirely to the matter of notification with respect to taxes on real property, although, to some extent at least, it affects also notification respecting taxes on personal property.

█ It has been frequently stated by this court, in cases affecting real estate, that a proceeding to assess and collect taxes upon real property is a proceeding *in rem;* that the owner of the property is chargeable with knowledge of every step in the tax procedure; and that statutory provisions with regard to owners are directory rather than mandatory. *Williams v. Pittock,* 35 Wash. 271, 77 Pac. 385; *Spokane Falls & N. R. Co. v. Abitz,* 38 Wash. 8, 80 Pac. 192; *Shipley v. Gaffner,* 48 Wash. 169, 93 Pac. 211; *Tacoma Gas &*

*Electric Light Co. v. Pauley*, 49 Wash. 562, 95 Pac. 1103; *Larson v. Murphy*, 105 Wash. 36, 177 Pac. 657; *McGuire v. Bean*, 151 Wash. 474, 276 Pac. 555; *Reese v. Thurston County*, 154 Wash. 617, 283 Pac. 170; *Colby v. Himes*, 171 Wash. 83, 17 P. (2d) 606.

The question now presented is whether that fundamental theory, which underlies our tax procedure, has been changed or modified by the provision of Rem. Rev. Stat. (Sup.), § 11245, referred to above. A consideration of the question may be aided somewhat by a brief reference to the preparatory steps leading to the juncture where the treasurer's authority and duty begin.

The assessment year and the fiscal year contemplated by our present tax statutes commence on January 1st and end December 31st. Rem. Rev. Stat. (Sup.), § 11242 (Laws of 1939, chapter 206, p. 762, § 39). All real and personal property subject to assessment and taxation is assessed with reference to its value on the first day of January. Rem. Rev. Stat. (Sup.), §§ 11111, 11112 (Laws of 1939, chapter 206, p. 731, § 8, and Laws of 1939, chapter 137, p. 387, § 1). With respect to real property, the assessor is required to make, in a plat and description book, in numerical order, a complete list of all lands or lots subject to taxation, showing the names and owners, if to him known, and, if unknown, to so state, and also showing the number of acres or lots, or parts thereof, and their respective values; the assessor's plat and description book is required to be kept as a part of the tax collector's records. Rem. Rev. Stat., § 11137 [P. C. § 6882-54].

It will be observed that the assessor is not required to include the addresses of the owners of real property. However, in Rem. Rev. Stat., § 11145 [P. C. § 6882-62], it is provided that, with respect to *all* property assessable in incorporated cities and towns, the name of the

owner, if known, together with his postoffice address, shall be placed opposite the amount of the assessment.

Listing of personal property follows a different procedure and is provided for by Rem. Rev. Stat., § 11119 [P. C. § 6882-15] and Rem. Rev. Stat. (Sup.), §§ 11140, 11141 (Laws of 1939, chapter 206, pp. 739, 740, §§ 16, 17). By the last mentioned section, the assessor is required, in making his assessment lists of personal property, to give the name and postoffice address of the person listing his property for assessment.

The board of county commissioners is required to certify to the assessor, on or before the second Monday in October, the amount of taxes levied. Rem. Rev. Stat., § 11239 [P. C. § 6882-78]. The assessor then extends the taxes upon the tax rolls and forwards the rolls to the county auditor on or before December 15th. Rem. Rev. Stat., § 11240 [P. C. § 6882-79].

The county auditor is required to deliver the tax rolls to the county treasurer on or before the first Monday in January following the date of the levy of taxes. Rem. Rev. Stat. (Sup.), § 11243 [P. C. § 6882-82] (Laws of 1935, chapter 30, p. 68, § 1). On receiving the tax rolls, the treasurer is required to post all real and personal property taxes from such rolls to the treasurer's tax segregation register and carry forward to the current tax rolls a memorandum of all delinquencies on each and every description of property; he must then give notice by publication that the tax rolls have been turned over to him for the collection of taxes thereon. Rem. Rev. Stat. (Sup.), § 11245. This same section includes the provision which is now before us for construction. The county treasurer is the receiver and collector of all taxes extended upon the tax rolls. Rem. Rev. Stat. (Sup.), § 11244 [P. C. § 6882-83] (Laws of 1935, chapter 30, p. 69, § 2).

In the ordinary course of events and as the result

of the procedure just outlined, the tax rolls for the ensuing year were to have been delivered to the treasurer on or before the first Monday in January, 1940, for collection of the taxes due.

When the real property assessment and tax rolls in Spokane county leave the assessor's office and come to the treasurer, as provided in Rem. Rev. Stat., § 11240, and Rem. Rev. Stat. (Sup.), § 11243, they contain, in the majority of instances, the name of the party to whom the property is assesssed, but in no instance do they contain the address of such party. In many instances, however, they do not even contain the name of the party.

According to the custom in Spokane county, when a tax on real property is paid to the treasurer, the name and address of the person paying it are taken down and subsequently entered upon the tax roll opposite the description of land upon which the tax is paid. This information is used by the treasurer in sending notices the following year to all such persons. If, however, the tax on a particular piece of property is not paid in any one year, no notice is sent to the reputed owner the following year, unless request therefor is made.

There are between 35,000 and 40,000 individual pieces of real property in Spokane county. Owing to the lack of names or addresses and the cumulation of delinquencies, there are now approximately ten thousand owners of real property in the county to whom notices are not sent.

The personal property tax rolls do not present much difficulty, because, as already stated, the assessor ascertains the names and addresses of the owners at the time of listing the property, and the treasurer is therefore able to send them notices of the amount of taxes due.

We come, now, to the question whether the statute under consideration is mandatory or directory.

■ A mandatory provision in a statute is one which, if not followed, renders the proceeding to which it relates illegal and void; a directory provision is one the observance of which is not necessary to the validity of the proceeding. 59 C. J. 1072, § 630; 25 R. C. L. 766, § 14. It is upon this distinction that our conclusion herein will rest.

There is no universal rule or absolute test by which it can be positively determined whether a provision in a statute is mandatory or directory. In the determination of that question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent as disclosed by all the terms and provisions of the act in relation to the subject of legislation, and by a consideration of the nature of the act, the general object to be accomplished, and the consequences that would result from construing the particular statute in one way or another. 59 C. J. 1072, § 631; 25 R. C. L. 767, § 14.

■ As a general rule, the word "shall," when used in a statute, is imperative and operates to impose a duty which may be enforced, while the word "may" is permissive only and operates to confer discretion. These words, however, are frequently used interchangeably in statutes, and without regard to their literal meaning. In each case, the word is to be given that effect which is necessary to carry out the intention of the legislature as determined by the ordinary rules of construction. 59 C. J. 1079, § 635; 25 R. C. L. 767, § 15. In our own tax code, the word "shall" is used in almost every section, and it is apparent that it is employed indiscriminately in both the imperative and the permissive sense.

With reference to powers and duties imposed by

statute on public officers, it is often difficult to determine whether they are mandatory or merely directory. Generally speaking, however, where the provisions affect the public interest or are intended to protect a private citizen against loss or injury to his property, they are held to be mandatory rather than directory. 59 C. J. 1076 *et seq.*, § 633; 25 R. C. L. 770 *et seq.*, §§ 17, 18. Always, however, the prime consideration is the intent of the legislature as reflected in its general, as well as its specific, legislation upon the particular subject.

Upon these various principles to which reference has just been made, the cases are so numerous that any analysis of them would be out of the question. We have, therefore, confined ourselves to a mere statement of the principles generally accepted by all courts, and have cited only well-known treatises wherein the cases may be readily found.

█ If the interpretation which the treasurer places upon the statute be correct, it is obvious that a situation of the most serious consequences will result. The mere matter of the expense involved will be a minor consideration in comparison with the disastrous effects upon our established procedure for the collection of taxes, upon which the existence of government rests. If it is mandatory upon the treasurer that he notify each and every taxpayer "of the amount of his real and personal property, and the total amount of tax due on the same," then he must not only compile an exhaustive list of the owners of property, but he must also see to it that the list is correct at the time that the notification is sent. In other words, he will not only be required to make use of such record information as he may have, but he will also be compelled to resort to the records of the auditor and the clerk, consult available directories, and make personal in-

quiries in the vicinity of the property. That effort would, of itself, be well-nigh impossible, but even if it could be accomplished, it still would not, in a great number of instances, produce the information necessary to discharge an imperative duty of notifying every taxpayer.

But that is not all, nor is it the more serious responsibility resting upon him. The treasurer would virtually have to employ a staff of title examiners and attorneys to determine accurately who held the title to each piece of property at the time the notice was forwarded. He would even be compelled, in many instances, to predict the ultimate decision of a court in a matter of disputed title. He would be required to anticipate the final decree of distribution in many probate proceedings. In short, he would practically be a guarantor of title as to every piece of real estate in the county. If he should overlook some available source of information, or should err in judgment as to the legal ownership of a specific piece of property, it would necessarily result in a corresponding loss of taxes to the state and its subsidiary divisions of government, or else require the treasurer to respond in damages. In consequence, there would be an utter perversion of our system of taxation, the entire procedure of which is for the purpose of establishing and enforcing liens for public revenue.

The legislature certainly did not contemplate, nor intend, that result when it enacted the statute here in question. That body undoubtedly was aware of the settled policy of this state, as reflected by an unbroken line of our decisions, which charges the owner of property with knowledge of the fact that his property is taxable every year. The legislature surely did not intend to change that policy and thereafter make the

owner's duty to pay taxes conditional upon the sending of a notice by the treasurer.

We are of the opinion that, when the legislature amended the statute by eliminating the necessity of a request by the owner or taxpayer that notice be sent him, it merely intended to direct the treasurer from that time forward to send notices to all owners of property as shown by his official records. We are satisfied that the statute is purely directory, and not mandatory in the sense that failure to comply therewith renders the whole tax proceeding illegal and void.

Undoubtedly, the treasurer should make every reasonable effort, based upon the record information in his office, to notify the last known owners of the property assessed; but he is not required to act at his peril, nor is the county to be deprived of its taxes, including interest and penalties thereon, merely because such notice had not been sent.

We will say, in conclusion, that, in our opinion, the procedure heretofore followed by the treasurer, as shown by the record in this case and as hereinabove indicated, is a sufficient compliance with the statute as now amended.

The judgment is affirmed.

ALL CONCUR.