W. E. BUELL, *Appellant,* v. IDA GERALDINE MCGEE, *as Treasurer of Pend Oreille County, Respondent.*[1]

[1]Reported in 113 P. (2d) 522.

*Cedric Miller,* for appellant.

*Hugh A. Dressel,* for respondent.

SIMPSON, J.—This action was instituted by the appellant to secure a writ of mandate to compel the respondent to foreclose certain delinquent assessments levied by Pend Oreille county diking district No. 3. The trial court refused to grant the writ.

The case comes to us upon an agreed statement of facts, and the only point relied upon by appellant is that Rem. Rev. Stat., § 4286-1 [P. C. § 1946-50a], does not provide an exclusive remedy for the foreclosure of delinquent diking district assessments, but is merely another method of foreclosure additional to that provided in Rem. Rev. Stat., § 4265 [P. C. § 1946-29].

The statement of facts shows that respondent is the treasurer of Pend Oreille county; that Pend Oreille diking district No. 3 is a duly organized diking district; that appellant is the owner of a bond issued by the diking district, the bond being in default; that, more than five years prior to the beginning of this action, the commissioners of the diking district levied certain assessments upon lands within the district for the purpose of paying the interest and principal of the outstanding bonds of the district, which assessments are now delinquent for the years of 1927, 1928, and 1929; that the assessments were duly certified to the

county treasurer of Pend Oreille county in the manner provided by law, and have ever since remained on record in the office of the county treasurer.

The statement shows further that, prior to the beginning of the action, appellant demanded that the county treasurer should foreclose the assessments mentioned; that the county treasurer, respondent herein, failed, neglected, and refused to comply with appellant's demand; that the diking district is still in existence, and, although it has been inactive for some time, it still has qualified commissioners to exercise its authorized powers; that no application has been made to respondent by the commissioners of the district for a certificate of delinquency for delinquent assessments and delinquent interest thereon; and that the outstanding bonded indebtedness of the district amounts to $36,500, no interest having been paid thereon since 1929.

As has already been indicated, the question before us is one of statutory interpretation, and it is necessary to set forth the rather lengthy sections in question.

Rem. Rev. Stat., § 4265, dealing with diking district assessments, provides:

"Upon the entry of the judgment upon the verdict of the jury, the clerk of said court shall immediately prepare a transcript, which shall contain a list of the names of all the persons and corporations benefited by said improvement and the amount of benefit derived by each, respectively, and shall duly certify the same, together with a list of the lands benefited by said improvements belonging to each person or corporation, and shall file the same with the auditor of the county, *who shall immediately enter the same upon the tax-rolls of his office, as provided by law for the entry of other taxes,* against the land of each of the said persons named in said list, together with the amounts thereof,. *and the same shall be subject to the same interest and penalties in case of delinquency as in case of general taxes, and shall be collected in the same man-*

*ner as other taxes and subject to the same right of
redemption and the lands sold for the collection of said
taxes shall be subject to the same right of redemption
as in the sale of lands for general taxes: . . ."*
(Italics ours.)

Rem. Rev. Stat., § 11278, and Rem. Rev. Stat. (Sup.),
§ 11278 [P. C. § 6882-117] (Laws of 1937, chapter 17,
p. 43, § 1), provides:

"After the expiration of five years from the date of
delinquency, when any property remains on the tax
rolls for which no certificate of delinquency has been
issued, the county treasurer shall proceed to issue cer-
tificates of delinquency on said property to the county,
and shall file said certificates when completed with the
clerk of the court, and the treasurer shall thereupon,
with such legal assistance as the county commissioners
shall provide in counties having a population of thirty
thousand or more, and with the assistance of the
county prosecuting attorney in counties having a pop-
ulation of less than thirty thousand, proceed to fore-
close in the name of the county, the tax liens embraced
in such certificates, and the same proceedings shall be
had as when held by an individual: . . ."

Rem. Rev. Stat., § 4286-1, which was regarded by the
trial court as containing the sole and exclusive method
of foreclosure in these cases, reads as follows:

"Whenever any diking district assessments levied
under this act shall remain unpaid for a period of four
years from the date when such assessment becomes
due and payable, the diking district, which levied said
assessment or assessments is hereby empowered and
authorized, through its board of commissioners, to
make application to the county treasurer of the county
in which said diking district is located, for a certificate
of delinquency to be issued to it for said delinquent
assessments and delinquent interest thereon. And the
county treasurer shall issue to said diking district a
certificate of delinquency in the same manner and form
as to an individual: Provided, however, That it shall
not be necessary or required for said diking district to

pay to said county treasurer any part or portion of said delinquent assessments or interest thereon, but payment of general taxes and interest due upon said general taxes, upon said diked lands will be sufficient payment by said diking district to entitle it to have said certificate of delinquency issued to it. Said diking district shall be empowered to foreclose said certificate or certificates and take title in said district the same as delinquent tax certificates are foreclosed by individuals. After acquiring title to any such lands through such foreclosure proceedings, the diking district, through its commissioners, may offer for sale and sell all, or any part, of such lands, in the same manner as counties are authorized to offer for sale and sell lands acquired by counties through delinquent tax foreclosure sales; and to issue a deed of conveyance therefor to the purchaser, executed by the commissioners of the diking district in behalf of the district, and attested by the clerk of the district. All revenue derived by the diking district from the sale of any such lands shall be first used for the redemption of any bonds and interest outstanding against said diking district which is due and payable, and the remainder thereof, if any, shall be applied to the payment of maintenance warrants, or other indebtedness, of the district, which is due and owing, in the priority deemed best by the board of diking commissioners."

As will be noted from a reading of Rem. Rev. Stat., § 11278, now Rem. Rev. Stat. (Sup.), § 11278, the county treasurers of this state are ordered to issue certificates of delinquency and to foreclose on property on which there is a tax delinquency of more than five years, and it is the contention of appellant that Rem. Rev. Stat., § 4265, makes Rem. Rev. Stat., § 11278 (Rem. Rev. Stat. (Sup.), § 11278), applicable to diking district assessments, in view of the fact that the portions of Rem. Rev. Stat., § 4265, which we have italicized, provide that such assessments shall be entered upon the general tax rolls, shall be subject to the same interest and penalties for delinquency as in the case of

general taxes, shall be collected in the same manner as general taxes, and shall be subject to the same redemption rights as in the case of general taxes.

Appellant further contends that the later section, Rem. Rev. Stat., § 4286-1, does not supersede or repeal Rev. Rev. Stat., § 4265, and that it simply adds another party to whom the county treasurer may issue a certificate of delinquency. Appellant's argument is that the section merely permits the commissioners to purchase certificates of delinquency so that the district may, if it wishes, protect any possible equity which it may have in such property; but that, if the district does not take advantage of this privilege, the duty to foreclose still remains upon the county treasurer. Under this view, it is urged, the two acts are in no way inconsistent, and can be given effect without in any way interfering with one another.

Respondent, however, urges (1) that Rem. Rev. Stat., § 4265, does not provide for foreclosure by the county treasurer, and (2) that, even if it does authorize foreclosure, it is superseded by Rem. Rev. Stat., § 4286-1. The first argument of respondent is predicated upon her interpretation of the language of Rem. Rev. Stat., § 4265, and Rem. Rev. Stat., § 11278 (Rem. Rev. Stat. (Sup.), § 11278). According to her view, Rem. Rev. Stat., § 4265, does not include any provision for foreclosure of diking district assessments in the same manner as general taxes, the mere provision for "collection" in the same manner as other taxes not being enough to warrant a conclusion that the same foreclosure procedure is contemplated. Respondent further contends that Rem. Rev. Stat., § 11278 (Rem. Rev. Stat. (Sup.), § 11278), does not apply to diking district assessments, and that its provision for the issuance of certificates of delinquency to the county and foreclosure of tax liens upon property on which a de-

linquency of five years exists is intended to apply to general taxes only, and not to assessments such as those which are here involved.

Respondent's second argument is based upon her interpretation of Rem. Rev. Stat., § 4286-1, which she interprets as superseding Rem. Rev. Stat., § 4265. This argument is apparently predicated upon respondent's belief that the language of the acts calls for an application of the rule that, when a later act is inconsistent and irreconcilable with an earlier act, the later act is deemed to repeal the earlier act, by implication.

We are of the opinion that appellant's position is the proper one.

The original enactment of Rem. Rev. Stat. (Sup.), § 11278, in so far as its provisions relating to the issuance of certificates of delinquency are concerned, was not changed by its reenactment, chapter 17, § 1, Laws of 1937, p. 43. Rem. Rev. Stat., § 4286-1, which was passed subsequent to the enactment of Rem. Rev. Stat., § 4265, did not formally repeal the prior act and cannot be considered to have taken its place unless it can be said that it repeals it by implication.

Repeals by implication are not favored and will not be deemed to have been intended, unless the implication be a necessary one and it is clearly manifest that the earlier acts would be irreconcilably inconsistent with the latter. *Mesher v. Osborne,* 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917; *Rothweiler v. Winton Motor Car Co.,* 92 Wash. 215, 158 Pac. 737; *Paine v. State,* 156 Wash. 31, 286 Pac. 89; *State ex rel. Shomaker v. Superior Court,* 193 Wash. 465, 76 P. (2d) 306.

A conceded general rule of statutory construction is that, where there are provisions relating to the same subject matter embodied in different statutes,

they should be harmonized so as to maintain the integrity of both whenever it is possible.

Viewed in this light, it becomes necessary to construe the statutes together, and from them to ascertain their meaning and the intention which the law making body had in passing them. We are unable to find that the statutes are conflicting in any way.

Although special assessments are not "taxes" in the ordinary sense of the term, the provisions of Rem. Rev. Stat., § 4265, make it clear that diking district assessments are to be regarded as taxes in all matters relating to the collection thereof, including foreclosure of delinquent assessments. Throughout the section this intent is evidenced. It is directed that the assessments shall be entered on the general tax rolls; they are subject to the same interest and penalties in case of delinquency as in the case of general taxes; they shall be collected in the same manner as general taxes and are subject to the same redemption rights. Clearly, then, when Rem. Rev. Stat., § 11278 (Rem. Rev. Stat. (Sup.), § 11278), refers to property remaining on the tax rolls, it applies to property which remains on the tax rolls by virtue of all taxes, including diking district assessments.

We regard Rem. Rev. Stat., § 4286-1, as merely authorizing the diking district commissioners to obtain certificates of delinquency under the conditions stated and to foreclose such certificates. It is not a mandatory provision. The language used therein is "empowered and authorized." It is true, of course, that language which is ordinarily permissive is subject to a mandatory construction, provided the act reflects such an intent upon the part of the legislature. *State ex rel. Department of Public Service v. Northern Pac. R. Co.*, 200 Wash. 663, 94 P. (2d) 502; *Spokane County ex rel. Sullivan v. Glover*, 2 Wn. (2d) 162, 97

P. (2d) 628. Such an intent is found to be present when legal rights can only be protected and enforced by such construction. *Buell v. Toppenish,* 174 Wash. 79, 24 P. (2d) 431.

This is not a proper case for the application of a mandatory construction to words of a permissive nature. As we have already pointed out, Rem. Rev. Stat., § 4265, and Rem. Rev. Stat., § 11278 (Rem. Rev. Stat. (Sup.), § 11278), provide a remedy in those cases in which delinquencies have persisted; and a holding that Rem. Rev. Stat., § 4286-1, is mandatory and supersedes the earlier sections is not required by the interest of the bondholders or the public, since the later section requires that the diking district commissioners must pay to the county treasurer the general taxes and interest thereon before they may obtain from the county treasurer a certificate of delinquency. Under the procedure provided for in Rem. Rev. Stat., § 11278 (Rem. Rev. Stat. (Sup.), § 11278), it is not necessary for any such cash outlay to be made, in view of the fact that the county treasurer is compelled to foreclose on the land, sell it, apply the proceeds to the general taxes and interest thereon, and then apply the balance to the payments to bondholders. Clearly, the mandatory construction urged upon us by respondent is not called for by the circumstances and the nature of the enactment.

The judgment of the trial court is reversed, with instructions to grant the writ asked by appellant.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.