[No. 34504. *En Banc.* April 17, 1958.]

THE STATE OF WASHINGTON, *on the Relation of John E. Blume et al., Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*Kumm, Maxwell & Lee* and *Raymond J. Petersen, Special Assistant Attorney General,* for relator.

*The Attorney General* and *Jane Dowdle Smith, Assistant,* for respondent.

DONWORTH, J.—Relators are five persons, each claiming to be a *duly appointed* member of the state parks and recre-

[1]Reported in 324 P. (2d) 247.

ation commission, which was created by Laws of 1947, chapter 271, § 1, p. 1155 [*cf.* RCW 43.51.020]. Each submitted to respondent for payment a voucher for his statutory per diem (some also included travel allowance). Respondent, relying upon an opinion of the attorney general, dated January 30, 1957 (AGO 57-58 No. 9), refused to draw and issue warrants therefor, it being his position that *three* of the five relators were not validly appointed, because the governor had no statutory authority to appoint them. Relators petitioned this court for a writ of mandate directing respondent to draw and issue the warrants. The usual alternative writ was issued, and the cause was heard by this court on a stipulated statement of facts.

The validity of the appointment of each relator turns upon the correct interpretation of Laws of 1947, chapter 271, § 1, amending Laws of 1921, chapter 7, § 10, p. 14, as amended by Laws of 1945, chapter 36, § 1, p. 152 [*cf.* RCW 43.51.020].

The history of legislation concerning the establishment of the state parks and recreation commission and its predecessor must be considered in interpreting this statute. In 1913, the legislature established a park commission composed of five members, of whom four were elected state officials (specifically named in the act), and the fifth was a person appointed by the governor (Laws of 1913, chapter 113, § 1, p. 346). In 1921, the number of members was reduced to include only three state officers, *viz.*, the commissioner of public lands, secretary of state, and the state treasurer, *ex officio* (Laws of 1921, chapter 7, § 10). In 1945, the legislature provided that the commission should be composed of five elected state officers (specifically named in the act), thus increasing the membership from three to five by the addition of two more state officials (Laws of 1945, chapter 36, § 1).

The 1947 statute (RCW 43.51.020), which is here involved, created a new commission both in name and in composition. It reads as follows, in part:

"There is hereby created a 'State Parks and Recreation Commission' consisting of seven electors of the state which

shall exercise all the powers and perform all the duties now vested in and required to be performed by the State Board of Park Commissioners or the State Parks Committee. The members of the [Commission except three shall be appointed by the Governor by and with the advice and consent of the Senate and shall serve for a term of six years, expiring on December 31 of even numbered years: *Provided,* That of the members first appointed one shall be appointed for a term of two years, one for a term of four years, and two for a term of six years. Three members *may* be elected state officials and shall be appointed by the Governor and serve during the term for which they were elected.

"In making the appointments to the Commission, the Governor shall choose electors who understand park and recreation needs and interests. No person, except the three elected state officials mentioned herein shall be appointed if he holds any elective or appointive state, county or municipal office. Members of the Commission shall be entitled to be paid a per diem of fifteen dollars ($15), except that no public official shall receive a per diem, for each day actually spent on duties pertaining to the Commission, and in addition shall be allowed their expenses incurred while absent from their usual places of residence upon the same basis as expenses are payable to state officials and employees."] (Italics ours.)

This act was first introduced in the senate as Senate Bill No. 327 by Senator Witten. In its original form, the bill read:

"There is hereby created a 'State Parks and Recreation Commission' consisting of seven electors of the state which shall exercise all the powers and perform all the duties now vested in and required to be performed by the state board of park commissioners or the state parks committee. The members of the [commission except one shall be appointed by the governor by and with the advice and consent of the senate and shall serve for a term of six years, expiring on December 31 of even numbered years: *Provided,* That of the members first appointed two shall be appointed for a term of two years, two for a term of four years, and two for a term of six years. One member shall be appointed by and serve at the pleasure of the governor.

"In making the appointments to the commission, the governor shall choose persons who understand park and

recreation needs and interests. At least two of the members of the commission shall at all times be women. Electors, except one who holds any other elective or appointive state, county or municipal office, shall be ineligible for appointment. One member shall be appointed from each congressional district. Members of the state parks commission shall be entitled to be paid a per diem of ten dollars ($10) for each day actually spent on duties pertaining to the commission, and in addition shall be allowed their expenses incurred while absent from their usual places of residence upon the same basis as expenses are payable to state officials and employees.]"

After Senate Bill No. 327 was referred to the senate committee on parks and public buildings, the committee returned the bill with the recommendation that it do pass as amended in the following respects: The bracketed portion of the original bill, above quoted, was removed, and there was substituted therefor the bracketed portion of Laws of 1947, chapter 271, § 1 [*cf.* RCW 43.51.020], *except* that the word "shall" appeared in the place of "may" as italicized in the proviso thereof.

When the bill and the committee report reached the senate floor, the report was approved and the committee's amendment was adopted. Thereupon Senator Witten moved that the bill be further amended by striking the word "shall" and inserting in lieu thereof the word "may." This amendment to the committee's amendment carried by a voice vote. The bill, as thus amended, was passed by both houses, signed by the governor, and became Laws of 1947, chapter 271.

The fact that the legislature deliberately changed the word "shall" to "may" in passing the act in its final form is, we think, very significant, and clearly negates the existence of a legislative intent that the governor is compelled to appoint three elected state officials. There is no reasonable ground for respondent's argument that the use of the word "may" was the product of inadvertence on the part of the draftsman of the act.

Respondent cites several decisions of this court holding that the words "shall" and "may" in a statute are often

used interchangeably (*Spokane County ex rel. Sullivan v. Glover,* 2 Wn. (2d) 162, 97 P. (2d) 628 (1940); *State ex rel. Department of Public Service v. Northern Pac. R. Co.,* 200 Wash. 663, 94 P. (2d) 502 (1939)), and that in order to determine in a particular case whether the one chosen by the legislature is to be construed as mandatory or merely permissive, depends upon the legislative intent in each instance. *Spokane County ex rel. Sullivan v. Glover, supra; Faunce v. Carter,* 26 Wn. (2d) 211, 173 P. (2d) 526 (1946); *Seattle v. Reed,* 6 Wn. (2d) 186, 107 P. (2d) 239 (1940). This intent is to be determined from the legislation on the subject by recourse to the ordinary rules of statutory construction. *Faunce v. Carter, supra.*

 While it is true that language which is ordinarily permissive is to be given a mandatory construction where the act reflects such an intent upon the part of the legislature (*Spokane County ex rel. Sullivan v. Glover, supra; Buell v. McGee,* 9 Wn. (2d) 84, 113 P. (2d) 522 (1941); *State ex rel. Department of Public Service v. Northern Pac. R. Co., supra*), we are unable to find that a mandatory construction of the permissive word "may" is required in the present case in order to effectuate the intent of the legislature.

The controlling factor in the case now before us is the intention of the legislature as expressed in the act. As stated in 3 Sutherland, Statutory Construction (3d ed.), 95, § 5813:

"Each case stands pretty much on its own facts, to be determined on an interpretation of the particular language used."

In *Howlett v. Cheetham,* 17 Wash. 626, 50 Pac. 522 (1897), we quoted from the same author as follows:

" 'It is indispensable,' says Sutherland in his valuable treatise on Statutory Construction, § 218, 'to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, the key is found to all its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that

intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistence with such intention.' "

For the purpose of ascertaining the legislative intent in enacting the statute involved in this case, we must consider the history of prior legislation (see *Seattle v. Reed, supra*) concerning the operation of state parks, and the part played by elected state officers in relation thereto. Thus, having considered the old law and the mischief, we can ascertain the object of the legislature in passing the 1947 act in order to remedy the situation.

In 1913, in its first enactment on the subject, the legislature placed state parks under the jurisdiction of a state board of park commissioners consisting of *four* specified elected state officials, and one layman appointed by the governor. Obviously, the state officials could outvote the layman four to one.

In 1921, the state parks committee was created in lieu of the commission, and its membership was reduced to *three* such state officials (no layman was on the committee).

In 1945, committee membership was increased to include *five* such state officials and no layman.

Thus, when the matter came before the legislature in 1947, state parks had been continuously under the exclusive control of elected state officials for forty-four years. Senate Bill No. 327 proposed a definite change in this established policy. For the first time, elected state officers were to be in the minority on the commission, and laymen were to constitute a majority thereof. As originally introduced, Senate Bill No. 327 authorized the governor to appoint any seven electors to the newly created commission. The senate committee, to which the bill was referred, amended it to provide that

" . . . The members of the commission except three shall be appointed by the governor by and with the advice and consent of the senate . . . "

and that

"Three members *shall* be elected state officials and shall be appointed by the governor . . . ." (Italics ours.)

As above stated, the italicized word "shall" in the sentence just quoted was stricken by amendment made on the floor of the senate and the word "may" inserted in its place.

If this last amendment had not been made, the argument of respondent would be very persuasive, because the bill, as amended by the senate committee, directed the governor to appoint, as three members of the commission, three elected state officials. But after the floor amendment was adopted by the senate, the bill gave the governor discretionary power to appoint these three members of the commission either by designating any three elected state officials *or* any other three electors of the state.

To construe this statute as being a mandatory command to the governor to appoint three elective state officials, as respondent asserts it should be construed, would render the amendment made on the senate floor entirely abortive.

A further reason which compels us to hold that the word "may" was used by the legislature as permissive in this case is found in the second paragraph of § 10, as amended by § 1 of the 1947 act. After stating that the commission shall consist of seven electors of the state, this section further provides that:

"In making the appointments to the Commission, the Governor *shall choose electors who understand park and recreation needs and interests.*"

That sentence was not modified by floor amendment, but stands as it was initially proposed in Senate Bill No. 327. A mandatory requirement that three members of the commission shall be elected state officials would necessarily impair the broad discretion intended to be vested in the governor in appointing electors "who understand park and recreation needs and interests."

Of further significance is the fact that, since January, 1949, no elected state official has been appointed to the commission. The action of the predecessor to the present governor in appointing only laymen to the commission during eight years in office was never challenged. Hence, even if

there were an ambiguity in the language of this statute (we find none), the interpretation of § 1 consistently adopted by the executive department since 1949 would be entitled to great weight as an administrative construction of the act. Too, the fact that there have been five legislative sessions since that time and the legislature has not seen fit to make any further amendment, indicates a legislative approval of the interpretation of the executive department.

 It follows from what we have said above that the legislature, by the enactment of Laws of 1947, chapter 271, § 1, intended to make a significant change in its policy as to the administration of state parks by removing them from the exclusive control of elected state officials and placing them in the control of seven electors of the state, of whom not more than three *may* be elected state officials should the governor see fit to appoint them. Even if the governor, in his discretion, does appoint three state officials, they constitute a minority of the commission. As to the other four electors on the commission, the legislature has forbidden the appointment of anyone holding any elective or appointive state, county, or municipal office by providing that:

"No person, except the three elected state officials mentioned herein shall be appointed if he holds any elective or appointive state, county or municipal office."

Thus the legislature has taken control of state parks away from public office holders and placed it in the hands of qualified electors who are laymen. This was its prerogative.

Thus interpreting Laws of 1947, chapter 271, § 1 [cf. RCW 43.51.020], we hold that the five relators named herein were, at all times material to this controversy, duly appointed, qualified, and acting members of the state parks and recreation commission, and that they are severally entitled to receive from respondent, warrants drawn on appropriate state funds available for that purpose, in accordance with the respective vouchers described in the stipulated statement of facts filed herein.

It is hereby ordered that a peremptory writ of mandate, directed to respondent, issue forthwith commanding him to

perform the acts described in the preceding paragraph hereof.

HILL, C. J., MALLERY, FINLEY, WEAVER, OTT, and FOSTER, JJ., concur.

HUNTER, J. (dissenting)—For the purpose of this dissent, I deem it advisable to again set out the statute under consideration, Laws of 1947, chapter 271, § 1, p. 1155 [*cf.* RCW 43.51.020].

"There is hereby created a 'State Parks and Recreation Commission' consisting of seven electors of the state which shall exercise all the powers and perform all the duties now vested in and required to be performed by the State Board of Park Commissioners or the State Parks Committee. The members of the Commission *except three shall be appointed by the Governor by and with the advice and consent of the Senate and shall serve for a term of six years,* expiring on December 31 of even numbered years: *Provided,* That of the members first appointed one shall be appointed for a term of two years, one for a term of four years, and two for a term of six years. *Three members may be elected state officials and shall be appointed by the Governor and serve during the term for which they were elected.*

"In making the appointments to the Commission, the Governor shall choose electors who understand park and recreation needs and interests. No person, except the three elected state officials mentioned herein shall be appointed if he holds any elective or appointive state, county or municipal office. Members of the Commission shall be entitled to be paid a per diem of fifteen dollars ($15), except that no public official shall receive a per diem, for each day actually spent on duties pertaining to the Commission, and in addition shall be allowed their expenses incurred while absent from their usual places of residence upon the same basis as expenses are payable to state officials and employees." (Italics mine.)

In determining the legislative intent in the construction of this statute, the majority most convincingly supports its conclusions by the writer's scholarly analysis of the history of the enactment, and is even more persuasive by detailing the circumstances of the amendment prior to its adoption

by the legislature's substitution of the word "may" in place of the word "shall."

The majority, however, appears to have overlooked the application of a cardinal rule of statutory construction that the legislative intent is also obtained by a consideration of the act in its entirety. It seems to have placed undue emphasis on the change of one word to the exclusion of the language in the remainder of the enactment, which we are ·compelled to consider in the disposition of this case. The rule is succinctly stated in 2 Sutherland, Statutory Construction (3d ed.), 339, § 4705:

" 'It is an elementary ·rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should ·be construed so that effect is given to all its provisions, so that no part will be *inoperative* or *superfluous, void* or *insignificant,* and so that one section will not destroy another unless the provision is the result of obvious mistake or error." (Italics mine.)

The court stated in *Spokane County ex rel. Sullivan v. Glover,* 2 Wn. (2d) 162, 97 P. (2d) 628 (1940):

"There is no universal rule or absolute test by which it can be positively determined whether a provision in a statute is mandatory or directory. In the determination of that question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent *as disclosed by all the terms and provisions of the act in relation to the subject of legislation,* and by a consideration of the nature of the act, the general object to be accomplished, and *the consequences that would result from construing the particular statute in one way or another.* 59 C. J. 1072, § 631; 25 R.C.L. 767, § 14." (Italics mine.)

In *DeGrief v. Seattle,* 50 Wn. (2d) 1, 297 P. (2d) 940 (1956), this court again said:

" 'It is too well-established to need citation of authority that a court may not place a *narrow, literal, and technical construction upon a part only* of a statute and ignore other relevant parts. In the process of construction, *the intention of the lawmakers must be extracted from a consideration of all of the provisions of the act.' In re Cress,* 13 Wn. (2d) 7, 123 P. (2d) 767.

"In construing a statute, the legislative intent must be

gleaned from a consideration of the whole act by giving effect to the *entire statute* and every part thereof. *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693, and cases cited.

" 'It is our duty to construe two statutes dealing with the same subject so that the integrity of both will be maintained,. *Buell v. McGee,* 9 Wn. (2d) 84, 90, 113 P. (2d) 522 (1941). The same rule applies to the construction of parts of one act. Each part must be construed *in connection* with every other part or section. 2 Sutherland, Statutory Construction (3d ed.), 336, § 4703.' *Tacoma v. Cavanaugh,* 45 Wn. (2d) 500, 275 P. (2d) 933." (Italics mine.)

In applying the above rules, the court is bound to glean the legislative intent from that which the statute discloses in its most reasonable sense from its entire examination irrespective of legislative history and change of specific words by amendment. This is a corollary to the rule, so well known citation is unnecessary—*that a person is presumed to intend the natural consequences 'of his acts.* In this instance, the legislature must therefore be presumed to intend to mean just what it says in accordance with the language of the entire enactment through which it speaks.

When read in its entirety the act becomes illogical and inconsistent with construction of the word "may" as permissive, as concluded by the majority. The absurd *result* of this construction is:

(1) On the one hand, four members of the state parks and recreation commission are appointed by the governor with the advice and consent of the senate. On the other hand, three members can be appointed by the governor who are other than elected state officials, without the advice and consent of the senate.

(2) On the one hand, four members of the state parks and recreation commission are appointed for terms of six years. On the other hand, three members other than elected state officials may be appointed by the governor, *with no term* whatsoever.

Considering the word "may" as mandatory gives the true meaning and intent of the statutory language. It renders logical the inconsistencies and absurdities above pointed out.

(1) The governor would be. required to appoint to the commission, in addition to the four members appointed with the advice and consent of the senate, three elected state officials who being designated in the enactment by the legislative body, removes any reason for their appointment with the advice and consent of the senate.

(2) The governor would be required to appoint to the commission, four members whose terms would be six years, and three elected state officials whose terms would be that for which they were elected.

The latter construction appears so obviously correct when considered that there would appear to be no room left for disagreement. This demonstrated legislative intent found in the statute itself, overcomes any other theory of interpretation. Rules of construction require this court to adopt this logical intendment as compared to the illogical result that must be given the statute with a permissive power of appointment lodged in the governor.

The majority recognizes the rule requiring language which is permissive to be given a mandatory meaning where the act reflects such an intent upon the part of the legislature:

"While it is true that language which is ordinarily permissive is to be given a mandatory construction where the *act* reflects such an intent upon the part of the legislature [citations omitted], we are unable to find that a mandatory construction of the permissive word 'may' is required in the present case in order to effectuate the intent of the legislature." (Italics mine.)

The error committed in this instance is in the application of the rule by the majority's failure to consider the legislative language in its entirety.

The majority finally concludes that the word "may" must be permissive to enable the governor to comply with the following language in the enactment:

" . . . In making the appointments to the Commission, the Governor shall choose electors *who understand park and recreation needs and interests.*" (Italics mine.)

Again this language must be read with the entire act. A mandatory construction of the word "may" would not defeat the appointment of seven qualified electors as contemplated by the statute. The governor would exercise his discretion in *appointing* four *qualified* members of the commission, and the remaining three members appointed would be presumed qualified, having been designated by the legislature to be members of the commission. Their ability to *"understand park and recreation needs and interests"* could hardly be questioned when they are men of such capacity and stature that the majority of the people of the state of Washington were willing to repose in them the necessary trust and confidence to carry out the high responsibilities of the respective offices to which they had been elected.

The language of the statute in its entirety discloses a legislative intent that the word "may" be given a mandatory construction. The governor was without authority to appoint more than four electors who were not elected state officials to the state parks and recreation commission.

The writ should be denied.

ROSELLINI, J., concurs with HUNTER, J.