[No. 7359.  Decided June 4, 1908.]

TACOMA GAS AND ELECTRIC LIGHT COMPANY, *Appellant*, v. LUTHER HARRY PAULEY *et al.*, *Respondents*.[1]

TAXATION—DELINQUENCY CERTIFICATE—FORECLOSURE—SUMMONS—NAME OF OWNER—KNOWLEDGE OF OWNERSHIP. A tax foreclosure being a proceeding *in rem*, a published summons in a general county foreclosure need not be addressed to the several owners of the property taxed as they appear on the tax rolls, but it is sufficient if addressed to "Unknown" owners, where it appears that the property had changed hands several times, and had been variously assessed to different owners, and there was no showing of fraud or that the treasurer knew, when the delinquency certificate was issued, who the owner was.

SAME—SETTING ASIDE SALE—GROUNDS—OWNERS—KNOWLEDGE OF TAX. The fact that the owner of property wrote to the county treasurer asking for a statement of the delinquent taxes, and received no answer, is not ground for setting aside a tax title based upon a general county tax foreclosure in which the owner was not personally served or named in the summons published.

SAME—GROUNDS—ASSESSMENT ROLLS—DESCRIPTION OF PROPERTY—DECREE—EFFECT. Insufficiency in the description of property in one of the assessment rolls is not ground for setting aside a general county tax foreclosure, in view of Bal. Code, § 1767, making the judgment of foreclosure conclusive evidence of its regularity or validity as to defenses that might have been made, except where the tax was paid or the real estate not liable.

APPEAL—REVIEW—HARMLESS ERROR. Unnecessary findings of fact and conclusions of law in an equitable proceeding do not constitute prejudicial error.

SAME. In an action to set aside a tax title, which was dismissed for failure of the plaintiff to sustain his cause of action, the plaintiff is not injured by a decree confirming the tax title of the defendant.

[1]Reported in 95 Pac. 1103.

Appeal from a judgment of the superior court for King county, Griffin, J., entered January 9, 1908, upon findings in favor of the defendants, dismissing an action to set aside a tax sale and deed, after a trial before the court without a jury. Affirmed.

*T. L. Stiles,* for appellant.

*I. B. Knickerbocker,* for respondents.

Root, J.—This is an action to avoid a tax sale and deed of certain lands in King county, the sale having been made at the general county sale of 1902. From a judgment dismissing plaintiff's action and confirming defendants' title, this appeal is prosecuted.

The facts are substantially these: On the 17th day of May, 1881, the Northern Pacific Railroad Company contracted to sell the lands in question to one Charlie Tumas, an Indian, upon payments the last of which was to be made in May, 1884. Tumas contracted to pay all taxes on the premises. A conveyance was made to Tumas, October 1, 1884. December 26, 1887, Tumas and his wife conveyed to C. F. Seal. December 23, 1889, Seal conveyed to Horatio C. Clement. February 28, 1890, Horatio C. Clement and his wife conveyed to the Tacoma Light and Water Company. May 1, 1895, the Tacoma Light and Water Company conveyed to the plaintiff. The tract of land in controversy is described as "Lot 8 and the east half of the northwest quarter of the southwest quarter of Sec. 17, T. 21 N., R. 5 East, excepting a tract of 5 acres, described as follows: Commencing at a point 1048 feet east of the northwest corner of the southwest quarter of said section 17; running thence south 20 rods; thence east 40 rods; thence north 20 rods and thence west 40 rods to the place of beginning." The plat drawn on a large scale, which is a part of paragraph 3 of the complaint, shows the situation of the land on Green river. For the year 1883 the entire tract, without the exception, was

assessed to John Lagolt and Chas. Tumas as owners, and a tax of $3.92 was levied thereon, which not being paid, the property was sold to the county by the sheriff May 7, 1884. For 1884, the taxes seem to have been paid. For 1885, lot 8 was not assessed at all; but the other part of the tract (E. ½ of N. W. ¼ of S. W. ¼) was included in a description "W. ½ of S. W. ¼ of Sec. 17, etc.," assessed to "Charles Tenas," as owner, and a tax of $11.40 was levied upon the 80 acres described; or, proportionally, $2.85 on the twenty-acre tract owned by Tumas. This tax not being paid, the land was sold to the county by the sheriff on the 11th day of June, 1886. The taxes were paid for the years 1886-7-8. For 1889, the tax for the west twenty acres (E. ½, N. W. ¼, S. W. ¼) was paid, but that on lot 8 was not paid. C. F. Seal was then the owner of the original two tracts, less the five acres, shown upon the plat referred to, subject to whatever rights had been lost by the two sales above mentioned. As an assessment to Seal, this was the entry in the roll: "Pt. lot 8 (less 5 acres)", the section, township and range following, and by that description it was sold to the county, by the sheriff, on the 9th day of August, 1890, for the tax of $3.15.

Subsequent to 1890, all taxes were seasonably paid. The Revenue Law of 1893 required the county treasurer to make up a register of unpaid taxes (p. 358, § 80), and provided that lands theretofore sold to counties for delinquent taxes should be deemed registered (p. 360, § 85). And so the treasurer of King county registered each of the above-mentioned sales, and named Charles Tumas and John Lagolt as owners in 1883, "Charles Tenas" as owner in 1885, and C. F. Seal as owner in 1889. The descriptions were the same as above given, excepting that in registering the sale of 1889 the treasurer added to the description: "Pt. lot 8 (less 5 acres)", the following: "Com. at a point 1048 feet E. of N. W. Cor. of N. W. ¼ of said Sec. 17; S. 20 rods, E. 40 rods, N. 20 rods, W. 40 rods to beg." Later the above "N. W."

was changed to "S. W." by some treasurer. Next, pursuant
to the statute of 1897 (Secs. 90 and 94, pp. 174 and 181),
the treasurer issued two certificates of delinquency, Nos.
94,879 and 94,880, on the 31st of January, 1898. These
certificates were not at hand, and resort for their contents
was had to the treasurer's record of them, copies of which
are contained in the statement of facts. The first certificate,
No. 94,879, covered the, east one-half of the northwest quar-
ter of the southwest quarter, less the northeast two and one-
half acres, by a long and complicated description, and recited
taxes, penalties, interest, costs, etc., for two years, 1883 and
1885. The second certificate, No. 94,880, covered lot 8, less
five acres, but the excepted tract as described only included
about three acres of the lot. There was a recital of taxes,
penalties, interest, costs, etc., for two years, 1885 and 1889.
Both certificates stated that the owner was "Unknown,"
although at the time they were issued the original assessment
rolls showed the names of the assessed owners, Tumas,
Lagolt, "Tenas," and Seal; the register of unpaid taxes con-
tained the same names of owners; and for two years at least
—1896-7—the tax rolls of the county had contained the
name of the Tacoma Light and Water Company as the owner
of the property. In 1890 the lands were sold by the sheriff
to the county for taxes delinquent for the year 1889, which
taxes appear afterwards to have been paid upon part of the
land. On May 14, 1894, the superior court of King county
entered a judgment and order of sale, directing the county
treasurer to sell said property for delinquent unpaid taxes,
and a portion of said property was so sold to the county for
the taxes of 1883 and 1885, and the remainder of said prop-
erty was, under an order of said court, sold to the county for
delinquent taxes of 1885 and 1889. All of these proceedings
are matters of record in King county.

Some time after the delivery of the certificates of delin-
quency and prior to January 1, 1902, the county commenced

an action to foreclose said certificates. Said action was · a proceeding against all real property upon which there were unpaid taxes for the year 1895, and prior years, and is commonly known as the "King County Omnibus Tax Foreclosure Suit." The notice of summons was published in the Seattle Times, and covered many pages of that paper. All acreage property was described and arranged numerically in said notice and summons according to range, township, and section. The tracts of land involved herein appeared in the proper place in said notice with the owner's name appearing as "Unknown," in each instance. The usual proceedings were had, and a judgment and decree and order of sale duly signed and entered in the suit. Pursuant to said judgment, decree, and order of sale, the county treasurer sold the property herein involved to this respondent, Luther Harry Pauley, and on December 9, 1902, the county treasurer, in pursuance of said sale, executed and delivered to Pauley a tax deed, which was duly recorded. On or about June 15, 1905, the appellant tendered respondent Pauley $117.08 for moneys paid by Pauley for taxes, penalties, interests, and costs upon said property, and requested respondent to execute to appellant a quitclaim deed of the land in controversy. Respondent declining to receive the money or execute the deed, this action was commenced in July, 1905.

Appellant's first contention is that, because the published summons was not addressed to any of the several owners of the property taxed as they appeared upon the tax rolls up to the day the foreclosure suit was commenced, it was void as to that property, and conferred no jurisdiction upon the court to render any judgment against it. We do not think this contention can be upheld. It has been repeatedly held by this court that proceedings to foreclose a tax certificate are in the nature of proceedings *in rem*, and that they run against the property itself rather than the owner. In the case of *Shipley v. Gaffner*, 48 Wash. 169, 93 Pac. 211, this court said:

"The main question in the case is, may the county foreclose for delinquent taxes against property assessed to unknown owners, if the taxing officers knew, or by reasonable diligence could have ascertained, the names of the real owners. We have repeatedly held that these foreclosure proceedings are *in rem*, and not against the person of the owner, and that owners are bound to take notice of the property they own and pay the taxes thereon and defend against foreclosure for delinquent taxes, even though the property is assessed to unknown owners or to other persons."

In the case of *Allen v. Peterson*, 38 Wash. 599, 80 Pac. 849, this language was used:

"As we have repeatedly held, a tax foreclosure proceeding in this state is a proceeding against property, and is in no sense an action against the person of the owner of such property. Its purpose is to charge such property with its just proportion of the public revenues; and the state's dominion over the land exists for that purpose, without regard to its ownership."

And in the case of *Spokane Falls & Northern R. Co. v. Abitz*, 38 Wash. 8, 80 Pac. 192, the court spoke as follows:

"Appellant contends that, under the provisions of this section, notice shall be given to the person or persons appearing on the treasurer's rolls as the owner or owners, at the time the notice is given, and not when the certificate is issued. We have frequently held that a proceeding to assess and collect taxes upon real estate under this statute is a proceeding *in rem*."

In *Washington Timber & Loan Co. v. Smith*, 34 Wash. 625, 76 Pac. 267, the court said:

"The difficulties attending the collection of public revenue are many at best, and the relation of the citizen to the subject is somewhat different from his relation to the ordinary contractual obligations. He must take notice that by law his property is assessed each year, that the tax is due and delinquent at a fixed time, is a lien upon his land, and, if not paid, that the lien shall be enforced by foreclosure proceedings, and in the manner provided by statute. The action is not *in personam* but *in rem*."

In *Williams v. Pittock*, 35 Wash. 271, 77 Pac. 385, this language is employed:

"Tax proceedings, under our statutes are purely *in rem*. The same is true of tax foreclosure proceedings. Our statutes permit property to be assessed to an unknown owner, when the owner's name is unknown. It is also provided that the notice in the foreclosure proceedings shall contain the name of the owner, if known. The fair inference to be drawn from these statutes, is that, if a property has been assessed to an unknown owner, and the certificate of delinquency has been so issued, the foreclosure may be had in form against an unknown owner. It would appear that the actual name of the real owner is made no more essential in the proceedings to foreclose, than it is in the assessment. The whole procedure, including the assessment, foreclosure, and sale, is for the purpose of establishing and enforcing a lien for public revenue, which, under the policy of the state, is chargeable to the property only, and not personally to the owner. It is the land itself with which the state is concerned, and its dominion over the land for revenue purposes exists without regard to who may be the owner. All owners know that such is the fact, and that the power of taxation will be exercised each year. In the very nature of our revenue procedure, the statutory provisions with regard to owners must have been intended to be directory, rather than mandatory—of the form, and not of the essence, of the proceedings."

Bal. Code, § 1767 (P. C., § 8704), reads as follows:

"Deeds executed by the county treasurer, as aforesaid, shall be *prima facie* evidence in all controversies and suits in relation to the right of the purchaser, his heirs and assigns, to the real estate thereby conveyed of the following facts:

"First: That the real estate conveyed was subject to taxation at the time the same was assessed, and had been listed and assessed in the time and manner required by law;

"Second: That the taxes or assessments were not paid at any time before the issuance of deed;

"Third: That the real estate conveyed had not been redeemed from the sale at the date of the deed;

"Fourth: That the real estate was sold for taxes, assessments, penalties and costs, as stated in the deed;

"Fifth: That the grantee in the deed was the purchaser, or assignee of the purchaser;

"Sixth: That the sale was conducted in the manner required by law.

"And any judgment for the deed to real estate sold for delinquent taxes rendered after the passage of this act, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or assessments have been paid, or the real estate was not liable to the tax or assessment."

We think, where the certificate of delinquency is regular upon its face and properly and seasonably filed and the foreclosure proceedings thereunder and the sale following are all regular, that there is not an absence of jurisdiction because the county treasurer in making up the certificate of delinquency stated therein that the owner was unknown where the facts are as shown in this case. It appears that this property had changed hands several times and that there were some notations made upon the tax rolls with lead pencil, which the appellant claims were sufficient to indicate to the county treasurer who the owner was. We do not think the showing made here is sufficient to justify the conclusion that the county treasurer knew, or could have known from the tax records, who the owner was at the time he made out the certificate of delinquency. There is no showing of fraud on the part of that official and nothing to show this respondent responsible for any errors which the county treasurer or other county authorities may have made, if any were made, in any of the transactions having to do with the preparation of the certificates of delinquency or their foreclosure. There probably are cases where the owner of property, sold under a cer-

tificate describing the owner as unknown, might be heard to question the foreclosure proceeding. But we do not think the facts in this case justify this appellant in setting aside such foreclosure and sale. An abstract of title or an examination of the published summons would have revealed these unpaid taxes, which had for so many years been delinquent.

An officer of the appellant testified that he wrote to the county treasurer asking if there were any delinquent taxes for former years, but received no answer to his inquiries, and it is urged that this silence justified the appellant in believing that there were no such taxes. We are unable to agree with this conclusion. Had the treasurer answered the inquiries, and stated that there were no delinquent taxes, and such information had been found to be erroneous, a. different question might be presented. But we cannot overturn a tax proceeding upon the showing here made in this particular. It is urged that the description in one of the assessment rolls was insufficient. This is insufficient, in the light of Bal. Code, § 1767, to justify a reversal of the judgment. It is urged that the trial court had no authority to make findings of fact and conclusions of law, this being an equitable proceeding. In such an action, findings and conclusions are unnecessary, but the fact that they are made we do not think constitutes an error prejudicial to appellant. Appellant urges that the lower court erred in confirming the title of respondents in and to the real estate involved. If the conclusion of the trial court was correct in finding that appellant's cause of action could not be sustained, and that the foreclosure proceedings and sale were regular, we do not think appellant is injured by the portion of the decree complained of.

Finding no error in the record, the judgment of the superior court is affirmed.

HADLEY, C. J., FULLERTON, DUNBAR, MOUNT, and CROW, JJ., concur.