Argued November 18, 1952, affirmed December 16, 1953

# HARRIMAN *v.* LINN COUNTY

264 P. 2d 816

2

*Sidney A. Milligan,* of Eugene, argued the cause for appellant. With him on the brief was Neil Brown, of Eugene. On the supplemental brief, filed July 25, 1953, were Milligan & Brown, of Eugene, and Weatherford & Thompson, of Albany.

*Courtney R. Johns,* District Attorney for Linn County, of Albany, argued the cause and filed a brief for respondent, and also a supplemental brief July 10, 1953.

*Lamar Tooze* and *Denton G. Burdick, Jr.,* of Portland, argued the cause for respondent and cross-appellant. With them on the brief were Cake, Jaureguy & Tooze, of Portland. On the supplemental brief, filed July 8, 1953, were Cake, Jaureguy & Hardy; Tooze,

Kerr, Hill & Tooze; Denton G. Burdick, Jr.; and Lamar Tooze, Jr., all of Portland.

Before BRAND[*], Chief Justice, and HAY[***], ROSSMAN, LUSK, LATOURETTE[**] and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendant, W. E. Rhodes, and a cross-appeal by the plaintiff, Edward S. Harriman, from a decree which the circuit court entered quieting the title to a quarter section of timberland that lies in Linn county. The decree held that (1) the plaintiff Harriman (now cross-appellant and one of the two respondents) was the owner of an undivided half interest in the quarter section, subject to the curtesy right of Rhodes, and (2) Linn county (now a respondent, but which, together with Rhodes, was a defendant) was the owner of the other half.

Harriman claims that he is the owner in fee simple of the entire quarter section, subject to a curtesy interest in one half of it held by Rhodes. The defendant-respondent, Linn county, contends that it is the owner of an undivided half interest in the quarter section. Rhodes, the defendant-appellant, alleges that he is the owner in fee simple of an undivided half interest in the quarter section and that he is entitled to specific performance of a contract which he claims exists between the county and himself whereby, according to him, the county is bound to sell, and he to purchase, the other half interest which he and the county say it owns. Those, briefly stated, are the contentions of the parties.

[*] Chief Justice when this case was argued.
[**] Chief Justice when this opinion was filed.
[***] Deceased December 19, 1952.

We shall now take notice of a tax foreclosure proceeding, some transactions and a conveyance, in all of which the claims to title of the various parties to this suit have their seat.

It is conceded by the three parties to this appeal ( (1) Harriman, plaintiff-respondent and cross-appellant, (2) Rhodes, defendant-appellant, and (3) Linn county, defendant-respondent,) that prior to her death in 1940 one Zelma Carroll Rhodes was the record owner of an undivided half interest in the quarter section. It is also conceded by the parties that prior to December 10, 1942, a sister of Zelma Carroll Rhodes, by the name of Lillian Morey, was the owner of the other half interest. The defendant-appellant Rhodes was the husband of Zelma Carroll Rhodes, who upon her death left Rhodes as her widower, and a son, Jack Lannon, as sole heir.

August 28, 1942, when the taxes upon the property in question and upon some other tracts were delinquent and when the liens of the delinquent taxes were subject to foreclosure under the provisions of §§ 110-901 to 110-922, OCLA, as amended, Linn county filed against all of the properties a foreclosure proceeding of the type permitted by § 110-905, OCLA. December 10, 1942, the circuit court entered in that proceeding a foreclosure decree. The plaintiff Harriman charges that the decree was void as to the one-half interest owned by Lillian Morey. According to him, that individual was not named as a defendant in any of the following papers: (1) the application for a foreclosure decree, (2) the motion for an order of default, (3) the order of default, and (4) the foreclosure decree. The defendants Rhodes and Linn county deny the charge and insist that the foreclosure proceeding was valid. Harriman con-

cedes that (a) Lillian Morey's name was properly entered as owner in the foreclosure list (§ 110-902, OCLA); (b) a copy of the foreclosure list was made a part of the application for a foreclosure decree; (c) a certified copy of the foreclosure list was filed in the foreclosure suit when it was instituted; (d) the name Lillian Morey was entered in the published notice (§ 110-904, OCLA); (e) the published notice was regularly published as required by law; (f) a copy of the foreclosure list was attached to and made a part of the foreclosure decree; and (g) all of those papers properly described the property.

The plaintiff Harriman admits that the foreclosure upon the undivided half interest owned by Mrs. Rhodes (Zelma Carroll Rhodes) was valid, but, as to the half interest owned by Lillian Morey, he presents the contentions which we just summarized. Based upon them, he claims that the demands of § 110-905, OCLA, were not met and that the foreclosure decree was void as to her half interest. The pleading of Linn county alleges:

"* * * on the 28th day of August, 1942, a complaint was filed in the Circuit Court of the State of Oregon, for the County of Linn, wherein Linn County * * * was Plaintiff and * * * Lillian Morey were made Defendants * * *. That thereafter and on the 10th day of December, 1942, a decree * * * was signed by the judge presiding in said Court and cause that the Plaintiff have judgment against the Defendants named in said suit and cause, including * * * Lillian Morey; for the amount of the taxes * * *."

The plaintiff's pleading denied the averments just quoted. Both of the defendants contend that the foreclosure proceeding and its decree are not subject to the attack made upon them by the plaintiff.

January 19, 1944, the sheriff of Linn county executed and delivered to the county a deed of the kind for which § 110-917 makes provision, and which described the quarter section in question. It recited as its basis the tax foreclosure suit which we have described.

Having taken notice briefly of the foreclosure proceeding and of the fact that Harriman concedes that it was valid as to the half interest previously owned by Mrs. Rhodes, we shall now describe the transactions which Harriman contends gave him ownership, subject to a curtesy interest, in the half interest once held by Mrs. Rhodes. It is first necessary to take heed of a statute enacted in 1943 and then of a transaction between the county on the one hand and Rhodes and Lannon upon the other. Harriman claims that the statute governed the transaction and that the latter was the precursor of his title.

Oregon Laws 1943, Ch 214, in amending § 86-143, OCLA, included the following:

"* * * the county court or board of county commissioners shall have power at any time, without the publication of the notice hereinbefore provided for, to sell and convey by deed signed by the county judge and commissioners or the board of county commissioners, to the record owner or to his assigns, any property acquired by any county for delinquent taxes for not less than the amount of taxes and interest accrued and charged against such property at the time of purchase by the county with interest thereon at the rate of 6 per cent per annum from the date of such purchase, * * *."

December 8, 1944, the county court of Linn county, acting under the enactment just quoted, adopted a resolution which, referring to Rhodes and the aforementioned Lannon as "successors and assigns" of Mrs.

Rhodes, recited that those two were "desirous of re-acquiring said lands", that is, the undivided half interest previously owned by Mrs. Rhodes. We pause to explain that the appellant Rhodes concedes that no assignment was made to him, but the brief of his counsel says:

"The defendant Rhodes requested the Linn County Court to recognize him as the assignee of his deceased wife, Zelma Carroll Rhodes; this request was made as the widower of Zelma Carroll Rhodes and because she had requested him to get the land after she had suffered the stroke that ultimately caused her death."

It is in that manner that the appellant Rhodes claims that he was an assignee within the contemplation of the statute which we quoted. We now return to the resolution which the county court adopted. Going on, it said:

"WHEREAS, it appears to this Court that it is to the best interest of Linn County, Oregon, to proceed to sell and convey said property to the said successors and assigns of said former owner, for not less than the amount of taxes and interest accrued and charged against such property at the time of the purchase by the county with interest thereon at the rate of six per cent per annum from the date of such purchase, which sum is as follows:

| | |
|---|---|
| Judgment, | $ 61.77 |
| 1942 taxes, | 5.70 |
| 1942-43 taxes, | 10.13 |
| 1943-44 taxes, | 10.70 |
| Recording fee, | 1.20 |
| Acknowledgment on deed, | .50 |
| Cost of advertising, | 1.50 |
| Estimate more than 1944-45 taxes, | 15.00 |

\*    \*    \*

"WHEREAS, the said successors and assigns of said former owner are ready, willing and able to pay to Linn County, Oregon, the said sum of

$106.50 in consideration for a conveyance from Linn County, Oregon, of said lands; and

"WHEREAS, Zelma Carroll Rhodes is deceased and left her son, Jack Lannon, who has by law succeeded to whatever right, title and interest the said Zelma Carroll Rhodes had in said real property at the time of her death, subject to a courtesy right of W. E. Rhodes, surviving spouse of the said Zelma Carroll Rhodes.

"NOW, THEREFORE, IT IS HEREBY ORDERED that Linn County sell and convey said parcel of land to Jack Lannon, conveying and [sic] undivided one-half interest in the land above described, subject to the courtesy rights of W. E. Rhodes, the surving [sic] spouse of Zelma Carroll Rhodes, for the sum of $106.50 which sum is not less than the account of taxes and interest accrued and charged against said property at the time of the purchase by the county with interest thereon at the rate of six per cent per annum from the date of such purchase.''

On the same day that the resolution was adopted, the county, acting through its county court, executed an instrument which was entitled ''Deed'' and which, after mentioning the manner in which the county had acquired ownership of the undivided half interest previously owned by Mrs. Rhodes, declared:

"WHEREAS, the said Zelma Carroll Rhodes is deceased and left her son, Jack Lannon, who has by law succeeded to whatever right, title and interest the said Zelma Carroll Rhodes had in said real property at the time of her death, subject to a courtesy right of W. E. Rhodes, surviving spouse of the said Zelma Carroll Rhodes.

"And WHEREAS, said successors and assigns of said former owner are now desirous of re-acquiring said lands from the said County, and

"WHEREAS, it appears to this Court that it is to the best interest of Linn County, Oregon, to

proceed to sell and convey said property to the said successors and assigns of said former owner, for not less than the amount of taxes and interest accrued and charged against such property at the time of the purchase by the county with interest thereon at the rate of 6 per cent per annum from the date of such purchase, which sum is as follows:

| | |
|---|---:|
| Judgment | $ 61.77 |
| Recording deed | 1.20 |
| Acknowledgment on deed | .50 |
| Taxes for 1942 | 5.70 |
| 1942-43 Taxes | 10.13 |
| 1943-1944 Taxes | 10.70 |
| Cost of Advertising | 1.50 |
| Estimate more than 1944-45 taxes | 15.00 |
| | |
| Total | $ 106.50 |

pursuant to the authority in said court invested by the provisions of Section 86-143, OCLA; and

"WHEREAS, the said successors and assigns of said former owner are ready, willing and able to pay to Linn County, Oregon, the said sum of $106.50 in consideration for a conveyance from Linn County, Oregon, of said lands; and

"WHEREAS by Resolution and Order heretofore made and entered the Linn County Court, pursuant to the provisions of Section 86-143 OCLA has deemed it to the best interest of said County to sell and convey said parcel of land to part [sic] of the second part herein as successors and assigns of the former owner of said property, for the sum of $106.50 which sum is not less than the amount of taxes and interest accrued and charged against said property at the time of the purchase by the county with interest thereon at the rate of 6 per cent per annum from the date of such purchase,

"NOW, THEREFORE, the said Linn County, Oregon, in consideration of said sum of $106.50 receipt of which is hereby acknowledged and by virtue of the statutes of the State of Oregon, for such cases

made and provided, by and through its duly constituted County Court, consisting of E. G. Arnold, County Judge, H. A. Renninger and Claude G. Smith, County Commissioners, does hereby grant, bargain and sell, convey and quit-claim to Jack Lannon and W. E. Rhodes, their heirs and assigns forever, all of its right, title, estate and interest in and to the said parcel of real property hereinabove described."

The defendant-appellant Rhodes contends that the name Jack Lannon was included through error in the instrument just quoted. According to him, the district attorney, in drafting the instrument, inserted in it the name Lannon [that of Mrs. Rhodes' son] through a mistaken belief that the 1943 statute required the name of every successor of a deceased delinquent taxpayer to be included in the instrument if any one of them availed himself of the privilege afforded by the act. The brief of his counsel says that the district attorney "was under the impression that the name Jack Lannon had to be inserted as a matter of law in compliance with the statute under which the sale has been made (Oregon Laws for 1943, Ch. 214)". Although the position just indicated is the one taken in the brief submitted by Rhodes, yet the latter's cross-complaint alleged:

"Through error and mutual mistake, the said deed was so written that the grantee's name therein, in place of being W. E. Rhodes, was Jack Lannon and W. E. Rhodes; that the insertion of the name 'Jack Lannon' in said deed was and is a mutual mistake; * * *."

The cross-complaint did not pray for a reformation of the paper. The record contains no evidence indicating that the deed contains any word or name contrary to the intentions of the county court and its officials.

12

The plaintiff-respondent Harriman urges that the instrument signed by the county court and entitled "Deed" was not in truth a conveyance of the quarter section, but was a redemption from the tax foreclosure. He denies that the name Jack Lannon was written in the instrument through mistake, and maintains that it was the legal duty of the county court to have included that name in the instrument.

December 5, 1942, Lillian Morey and her husband executed a deed, the validity of which is not challenged, whereby they conveyed to the aforementioned Lannon all of their interest in the quarter section. May 13, 1948, Mr. Lannon and his wife executed a warranty deed, likewise free from challenge, which conveyed to the plaintiff Harriman all of the interest of the Lannons in the same quarter section. It recited that "the above granted premises are free from incumbrances except curtesy interest of W. E. Rhodes in undivided one-half interest." The Lannons' deed, it will be noticed, was executed after the county court had signed the instrument of December 8, 1944, which, the plaintiff contends, was a redemption. It will also be noticed that the Lannons' deed came after Mrs. Morey and her husband had executed their deed which conveyed to Lannon the undivided half interest.

To make matters clear, we explain that the plaintiff claims that he acquired the half interest previously owned by Mrs. Morey by purchasing it from Lannon, to whom the Moreys had conveyed it, and that he acquired the half interest at one time owned by Mrs. Rhodes by purchasing it [subject to the curtesy rights of her widower] from her heir, Jack Lannon, after her death and after foreclosure followed by redemption.

We now return to the delinquent tax foreclosure proceeding. The respondent Linn county and the de-

fendant-appellant Rhodes, as we have said, maintain that the proceeding was valid in its entirety; that is, valid not only as to the half interest owned by Mrs. Rhodes but also as to the half interest owned by Mrs. Morey. The county concedes that after its transaction with Rhodes and the aforementioned Jack Lannon [which we have described] it had no further interest in the half part previously owned by Mrs. Rhodes. Since no redemption occurred as to the undivided half interest owned by Mrs. Morey, the county insists that it is the owner of that part. According to the defendant-appellant Rhodes, the transaction of December 8, 1944, was a conveyance, and not a redemption. He, therefore, argues that he is the present owner of the half at one time owned by his wife. Further, he asserts that when the purported conveyance took place, he and the county agreed that it would convey to him for $2,000 the half interest previously owned by Mrs. Morey. He prays for specific performance of the alleged agreement. We have already described the manner in which the plaintiff Harriman lays claim, through purchase, to the quarter section, subject only to Rhodes' curtesy interest.

Mention has been made of the fact that, according to the plaintiff Harriman, errors occurred in the tax foreclosure procedure and that they rendered the decree void as to the half interest which Lillian Morey owned on the day the proceeding was filed.

The above will suffice as a statement of the facts and the claims of the parties.

The contentions advanced by the parties call for an application, and we believe for a construction once more, of the laws of this state which govern the sale of tax-delinquent property.

Our present laws, which delineate the manner in which counties may exact from tax-delinquent property the charges levied against it, did not spring full-blown into the statute books of this state. The seed from which those statutory principles eventually grew was planted in our neighbor State of Washington long prior to 1907 and there developed into flower. In the year just mentioned, a graft was taken from the Washington enactments and after its acceptance by our legislative assembly it became General Laws of Oregon 1907, Chapter 267. Since that time the transplanted enactment has had regular attention from our legislature, as the session laws attest. Hardly a session has passed without some change being made in the 1907 act, until now virtually nothing remains of the measure which came to us from our sister state to the north, except its central theme that the lien of delinquent taxes shall be foreclosed only through a judicial decree entered by the circuit court, after due notice has been given and all claimants to title have been afforded an opportunity to be heard.

Since the parties are in disagreement as to the meaning of the parts of the present act which control the issues between them, we believe that we will derive help in determining the meaning of our statute if we take notice briefly of the continuous gradation of the state's laws upon the subject of tax collection.

General Laws of Oregon, 1907, Chapter 267, made a revolutionary change in the procedure employed in exacting from tax-delinquent property the amount of the tax, interest and other charges levied against it. Prior to the enactment of that statute no judicial proceeding preceded the sale by the tax collector of tax-delinquent property. The collector's authority to sell the property was not an order issued by the circuit

court, but a warrant signed by the county clerk. Prior to the sale, no decree of a judicial or quasi judicial body had determined the correctness of the amount charged against the property, and the latter's purported delinquency. The administrative proceeding whereby the tax collector sold the property was in reality a forfeiture effected by non-judicial officers. An owner whose property was sold in that manner was afforded no opportunity to contest the tax, the purported delinquency, the exacted interest or other demand until a suit arose in which he could voice his objections to the sale of his property.

The 1907 legislation abolished sale by administrative order and substituted for it a sale conducted by virtue of an order which the circuit court had entered after (1) due notice had been given, (2) a pleading had been filed which alleged tax delinquency and set forth the amounts, (3) the owner had failed to appear or had filed an answer which the court, upon a hearing, had held lacking in merit.

The controlling issue in the present case calls for a determination as to whether, under our present statutes, any individual is a party defendant in a tax foreclosure suit. Or, stated otherwise, do our present laws which govern the foreclosure by counties of the lien of delinquent taxes require that a caption containing the owner's name as a party defendant shall be placed upon (a) the published notice; (b) the application for judgment and decree; (c) the foreclosure decree; and (d) other papers filed in the suit. We now return to the 1907 act.

Section 37 of the 1907 act authorized the tax collector, six months after taxes assessed against an item of property had become delinquent, to issue a certifi-

cate of delinquency and sell it to anyone who paid the county the amount of the delinquent taxes, the penalties and accumulated interest. The certificate of delinquency played an important part in our legislation concerning tax delinquency until the year 1939. In that year their issuance and use were terminated. Section 39 of the 1907 act empowered the holder of a certificate of delinquency, three years after the first date of delinquency, to institute a suit in the circuit court for the foreclosure of the lien of the delinquent taxes. Section 42 governed foreclosure by counties of certificates of delinquency, but for the moment we will confine ourselves to certificates held by individuals. The 1907 act did not employ the term "action in rem" or any equivalent of it in outlining the manner in which certificates of delinquency, held either by individuals or by counties, should be foreclosed. Section 39, in prescribing the procedure for the foreclosure of a certificate of delinquency owned by an individual, made provision for the use of a summons and required the latter to "notify the owner that he (the holder of the certificate) will apply to the circuit court of the county in which such property is situated for a decree foreclosing the lien against the property mentioned in such certificate." Next, the section said:

"* * * Such summons shall contain—

1. The title of the court, the description of the property and the name of the owner of the legal title thereof as the same appears of record, if known, the name of the holder of the certificate, the date thereof, and the amount for which it was issued, the year or years for the delinquent taxes for which it was issued, the amount of all taxes paid for prior or subsequent years, and the rate of interest on said amounts.

2. A direction to the owner of the legal title of

the property as the same appears of record, if known, and of any other person or persons who may have some interest in or lien or claim upon the property, and whom the holder of said certificate may desire to make codefendants, summoning him to appear within sixty days after service of summons or notice, exclusive of the day of service, and defend the action or pay the amount due; *  *  *.''

The section authorized service by publication in lieu of personal service.

Section 40 said:

''Summons shall be served and returned in the same manner as summons in a civil action is served in the circuit court.''

From the foregoing it appears that suits instituted by individuals for the foreclosure of certificates of delinquency held by them were in personam. In actual practice the papers employed in those proceedings (summons, decree, etc.) had captions in which the holder of the certificate was entered as plaintiff and the owner of the tax-delinquent property was defendant.

Section 42 of the 1907 act governed the foreclosure of certificates of delinquency held by a county. It permitted all of them to be foreclosed in one proceeding. The section directed that in such suits ''the same proceedings shall be had as when held by an individual'', but added ''that for the purposes of this section summons may be served or notice given exclusively by publication in one general notice''. The proceedings should be conducted, so the section ordered, ''in the name of the county''. It provided that ''all persons interested in any of the property involved in said proceedings may be made codefendants  *  *  *  and if unkown may be therein named as unknown owners, and the publica-

tion of such notice shall be sufficient service thereof on all persons interested in the property." The section further said:

> "* * * all persons owning or claiming to own, or having or claiming to have an interest therein, are hereby required to take notice of said proceedings, and of any and all steps thereunder."

Section 45 of the act made provision for an "application for judgment and decree" alike in suits by individuals and counties. It directed that the application should be "verified as pleadings" and that it should "contain the same averments as have heretofore been specified to be contained in the summons." Continuing, it said:

> "The court shall examine each application for judgment and decree * * *, and if defense * * * be offered by any defendant in the action the court shall hear and determine the matter in a summary manner".

The present requirement that the application must "contain a succinct statement of the cause of suit" did not become a part of our laws until 1939.

Under the statutory provisions which we just reviewed, the practice developed in suits filed by counties to place a caption upon the published notice, the application for judgment and decree and upon all other papers filed in the proceedings. The caption listed the county as plaintiff and the owners as defendants. By reverting to a preceding paragraph of this opinion in which we quote from the record, it will be seen that the tax suit under attack employed a caption of that kind. Our decisions which passed upon appeals from the foreclosure decrees adopted the captions. Thereby the statutory provisions were construed by routine practice

and that construction indubitably came to the attention of the legislative assembly.

Following the adoption in 1907 of the legislation of which we have taken notice, many amendments were made to the statute. Before long the legislature came to recognize the inexorable demand made by tax foreclosure proceedings conducted by counties in omnibus form for legislation making such suits proceedings in rem against the property itself. General Laws of Oregon, 1919, Ch 408, § 4, in amending the section which authorized counties to foreclose, ordained that the proceedings were "in rem against the property itself". No similar course was taken concerning the foreclosure of certificates of tax delinquency held by individuals. Although the 1919 amendment provided that suits filed by counties should be deemed proceedings in rem, it did not repeal the parts which apparently required that the owner should be a party defendant. One of those clauses, it will be recalled, said: "All persons interested in any of the property involved in said proceedings may be made codefendants"; and another: "No appeal shall be allowed the defendant from any judgment * * *, and no bond given on appeal shall operate as a supersedeas, unless the defendant taking such appeal shall * * *." The recurring amendments, however, gradually eliminated from the tax foreclosure statutes the passages which contemplated that the owner should be a party, and broadened further the distinction between foreclosure suits instituted by a county and those conducted by individuals.

Beginning with *Rae v. Morgan,* 125 Or 644, 266 P 1069, 267 P 1072, this court began to attach substantially the same effect to a decree which foreclosed the lien of delinquent taxes as is given to decrees entered in other suits which adjudicate the title to real property.

The decisions also ruled repeatedly that tax foreclosure proceedings instituted by counties are in rem against the property itself. In *Linn County v. Rozelle*, 177 Or 245, 162 P2d 150, the court rejected a contention that the proceeding was nothing more than quasi in rem and held that it was a proceeding in rem against the property itself. The decision termed the property as both defendant and debtor.

Of the many revisions which have been made to the 1907 act, the most far-reaching was Oregon Laws 1939, Ch 485. It placed our legislation on the subject of tax collection in virtually its present form. The act repealed the provisions of our earlier laws (Oregon Code 1935 Supp, § 69-801) which provided for certificates of delinquency and which enabled individuals to purchase such certificates (Oregon Code 1930, § 69-801) and foreclose them (Oregon Code 1935 Supp, § 69-807). Section 2 of the 1939 statute (§ 110-902, OCLA) renders it the duty of the tax collector, four months after delinquency, to prepare a paper known as the "foreclosure list" which must contain (1) the names of all persons appearing in the latest tax roll as respective owners of tax-delinquent properties; (2) a description of each tax-delinquent property "as the same appears in said latest tax roll"; (3) the year or years for which taxes are delinquent; and (4) the principal amount of delinquent taxes and interest. The foreclosure list plays an important role in the foreclosure of the lien of delinquent taxes.

Section 3 of the 1939 act (§ 110-903, OCLA) renders it the duty of the tax collector, six months after the day of tax delinquency, to institute proceedings for the foreclosure of the lien for the delinquent taxes "against each of the several properties included in such foreclosure list".

■ Although, as we saw, legislation prior to 1939 made use of the term "summons", the 1939 act completely avoids use of that term. It provides for a notice and designates its contents. Section 4 (§ 110-904, OCLA) says:

> "* * * Notice of each foreclosure proceeding, except as otherwise provided herein, shall be given exclusively by four weekly publications of said foreclosure list in some newspaper * * *."

Thus, the foreclosure list, when published in the required manner, is the notice. Going on, Section 4 says:

> "The publication of such notice shall be sufficient service on each and every person interested in any of said properties, and it shall not be necessary to mail a copy of such notice to the owner or to any other person interested in any property. All persons owning or claiming to have any interest in any property included in the foreclosure list are required to take notice of such proceeding and of any and all steps thereunder."

We deem it worthy to stress the words last quoted, that is, that all who own property listed upon the foreclosure list must take notice of the proceedings which ensue when the foreclosure list has been published.

Lest the change escape attention, we mention the fact that the words we quoted from Section 4 include these: "It shall not be necessary to mail a copy of such notice to the owner," whereas in Oregon Code 1930, § 69-816, the corresponding phrase read: "It shall not be necessary to mail any copy of such summons or application to any defendant". Thus, the 1939 act substituted for the words "summons" and "defendants" the terms "notice" and "owner". We see from the foregoing that the published notice is aimed at all mankind. It is a broadcast for "all persons own-

ing or claiming to own, or having or claiming to have any interest" in the property identified in the foreclosure list.

■ Section 4 of the 1939 act, shortly after the place where we discontinued the quotation, goes on to authorize personal notice upon any person "of the institution of the foreclosure proceeding" if it is deemed expedient to resort to that means. Then the section says:

> "* * * Such notice by personal service shall be in lieu of service by publication as to the defendant or defendants so served, and it shall not be necessary to include in the publication of the foreclosure list the name of such defendants or the description or other matters relating to their respective properties."

The only other part of the 1939 act which employs the term "defendant" is Section 7 (§ 110-907, OCLA) which permits "any person interested in any real property included in the foreclosure list" to file an answer, and, continuing, says: "The court shall examine such application for judgment and decree and, if answer and defense be filed by any defendant or other interested person" directs the court to hear the matter "in a summary manner without other pleading". Personal service was not employed in the case before us. As will be noticed from § 4 (§ 110-904, OCLA) if personal service is employed, the published foreclosure list does not include "the names of such defendants [those personally served] or the descriptions or other matters relating to their respective properties". Since that matter is excluded from the published foreclosure list [as to the defendants who were personally served], it seems that the foreclosure list prepared for publication is not the instrument which is to be served upon the defendants selected for

personal service. Evidently, as to them, some form of a summons must be employed and the proceeding, as to them, becomes in personam. Hence, §§ 4 (§ 110-904, OCLA) and 7 (§ 110-907, OCLA) properly use the word "defendant" in the places of which we have taken notice.

Section 5 of the 1939 act (§ 110-905, OCLA) continues the provision made in the preceding legislation for the foreclosure of all tax liens in one general proceeding. It then says: "Each such proceeding shall be a proceeding in rem against the property itself."

The 1939 act, through Section 6 (§ 110-906, OCLA), retains, albeit in altered form, the provision for an application for judgment and decree. In the previous legislation the application served as the sole pleading (complaint) upon the part of the county, but Section 6 requires the filing, as we shall now show, of a companion paper accompanying the application. It demands that a certified copy of the foreclosure list must be filed concurrently with the application. The latter must contain "a succinct statement of the cause of suit"; it must be verified and may be amended. Although the application must "contain a succinct statement of the cause of suit", the foreclosure list, which must be filed concurrently with it, sets forth, as we have seen, a detailed statement of the county's demand. It is tantamount to a bill of particulars. The requirement that a certified copy of the foreclosure list must be filed with the application for judgment and decree is imposed by this sentence: "Such application for judgment and decree, together with a certified copy of the foreclosure list, shall be filed with the county clerk on the day of the first publication of such list."

From the foregoing, we see that on the day of the first publication of the foreclosure list the foreclosing

24

officials must file (1) an application for judgment and decree, and (2) a certified copy of the foreclosure list. We also see from the above that unless personal service is employed, the required notice of the institution of the proceeding consists of "four weekly publications of said foreclosure list". Obviously, a foreclosure · list has no caption of the kind which is placed upon litigation papers and, hence, the published foreclosure list is not required to contain one, unless a requirement for its use lurks in some provision of our laws which has escaped our attention. Likewise, since the proceeding is "in rem against the property itself", the application for judgment and decree is not required to bear a caption listing individuals as defendants.

Section 42 of the 1907 act, which became § 69-816, Oregon Code 1930, provided, as we have seen, that in foreclosures instituted by counties "the same proceedings shall be had as when held by an individual". The latter were in personam. The 1939 amendatory act repealed the quoted words. The clause of § 42 of the 1907 act, which enabled the county to make "all persons interested in any of the property involved in said proceeding" "codefendants", and which became § 69-816, Oregon Code 1935 Supp., was likewise repealed by the 1939 act. Another provision of the 1907 act, which became § 69-816, Oregon Code 1935 Supp., said: "The publication of such notice shall be sufficient service thereof on all persons interested", and was likewise repealed by the 1939 law. The phrase "sufficient service thereof", when used in conjunction with the term "summons", had a connotation which implied that a person was the party defendant. In lieu of the phrase of which we have just taken notice, Section 4 of the 1939 act (§ 110-904, OCLA) employs this clause: "All persons owning or claiming to own or having or claim-

ing to have any interest in any property included in the foreclosure list are required to take notice of such proceeding and of any and all steps thereunder.''

We have noticed that many provisions of the 1939 act which, in addition to declaring that the foreclosure proceeding is ''in rem against the property itself'', eliminate from the previous legislation all phraseology at variance with the provision of the 1919 amendment which deemed the delinquent property as the defendant. Section 7 (§ 110-907, OCLA) further accents the ''in rem'' nature of a tax foreclosure suit. It authorizes ''any person interested in any real property included in the foreclosure list'' to ''file an answer and defense''. It will be observed that the ''interested'' person, in order to ''file an answer and defense'', need not avail himself of the privilege afforded by § 1-316, OCLA, and move for leave to intervene. The fact that he is ''interested'' in the property and that the proceeding is in rem authorizes him to appear on behalf of the property. When he files ''an answer and defense'' he does not thereby become a party defendant. Only the county and the property are parties. Section 8 (§ 110-908, OCLA) lends further emphasis to the ''in rem'' nature of the proceeding. In prescribing the relief which the tax foreclosure court may grant, it authorizes no relief of an ''in personam'' character, and goes no further than to declare that the liens of ''the delinquent taxes and interest'' shall be ''foreclosed''. In so doing, it restricts the resulting judgment to ''a several judgment against and a lien on each parcel of property''. Thus, the only relief which may be granted is of the kind awarded in ''in rem'' proceedings.

■ Without analyzing the legislation further, we see that a tax foreclosure proceeding is a special one. The

plaintiff is the county and the defendant is each item of property which is listed in the foreclosure list. The court, in entering its decree, can go no further than to order the foreclosure of the liens of the delinquent taxes and incidental charges.

The brief filed on behalf of plaintiff-respondent Harriman declares that this court has held several times that the owner of the property, which the county avers is tax delinquent, must be made a party defendant in the tax foreclosure suit. The brief cites *Knapp v. Josephine County,* 192 Or 327, 235 P2d 564; *Lane County v. Bristow,* 179 Or 653, 173 P2d 954; *Linn County v. Rozelle,* supra; *Elliott v. Clement,* 175 Or 44, 149 P2d 985, 151 P2d 739.

Those decisions contain statements which upon cursory reading lend support to the contentions of the plaintiff-respondent. However, as those decisions disclose, the tax foreclosure decrees upon which (a) *Elliott v. Clement,* (b) *Linn County v. Rozelle,* and (c) *Lane County v. Bristow* were based were entered by the circuit court in, respectively, 1935, 1929 and 1938. The enactments which governed those foreclosures had not undergone the major overhauling which was effected in 1939, and still included such terms as "defendant", "defendants", "codefendants" and "summons". Those facts must be borne in mind when one reads and analyzes those decisions. Seemingly, when the enactments of that time used the terms "defendant" and "codefendants" they meant "owner" and "owners". It was in that same way that our decisions used the words "defendant" and "codefendants".

■ The statements in the Knapp opinion which plaintiff-respondent mentions did not have, we believe, any

misleading implications. In that case, one Guthrie, prior to his death in 1930, had owned the property against which the county, in 1940, sought a decree for the foreclosure of delinquent taxes. Because Guthrie was listed as owner in the tax roll, his name was transferred to the foreclosure list when that paper was prepared. Inasmuch as the foreclosure list is the substance of the published notice, the name Guthrie appeared as owner of the purportedly delinquent property when the notice was published. When Guthrie died in 1930, his daughter, as his heir, succeeded to his ownership of the property, but did not apprise the tax officials of her father's death or of her succession to his title. The property was properly described in the tax roll, in the foreclosure list and in the foreclosure proceedings. The decision, in sustaining the foreclosure decree, held that the tax officials were not charged with the knowledge they would have gained had they examined the probate records. It mentioned § 110-833, OCLA, which imposes upon the owner the duty of giving the tax collector his name and address. Inasmuch as (1) the foreclosure list must enter as owner the name of the person which appears upon the latest tax roll, and (2) the foreclosure list carried as owner Guthrie, our decision sustained the validity of the foreclosure decree. In so holding, we occasionally lapsed into the vernacular of the parties and used the word "defendant" when we should have employed the word "owner". The paraphrasing was unwarranted but unimportant. Fortunately, for the most part, we employed the terminology of § 110-905, OCLA. Obviously, Guthrie, a dead man, whose death had occurred ten years before the foreclosure proceedings were instituted, could not have been a defendant, although, due to the failure of his daughter to have complied with § 110-

833, the tax officials were justified in carrying his name in the tax rolls as owner. That circumstance develops still further the fact that foreclosure proceedings are in rem. The name of the ''owner'' as entered in the foreclosure list is employed in the published notice, not for the purpose of making him a defendant, but in order to assist the real owner, whoever he may be, in determining whether or not his property is under foreclosure. Very likely the legislature reasons that the names which appear in the published notice will be a better means whereby owners can determine whether or not their property is under foreclosure than the technical words which describe the items of property. If an heir continues to pay taxes in the name of his deceased parent, the inclusion in the published notice of the deceased person's name may enable the heir to notice that his property is included in the omnibus foreclosure suit. But if the heir, in looking foreward to possible evil days and foreclosure proceedings, wishes his own name to be included in the published notice, it is his duty to pay heed to the statute which we mentioned in the Knapp decision and give the tax officials his name and address.

The above completes our review of the pertinent statutory enactments and selected decisions which construed them.

■ Returning to the facts, we observe that the sufficiency of the published notice (§ 110-904, OCLA) is not under attack and that its regularity is conceded. The notice, as required by § 110-904, included the foreclosure list and that document properly listed the name of Lillian Morey as one of the owners. It was properly published for the required number of times. Therefore, Lillian Morey was duly notified that unless she showed cause why a foreclosure decree should not be

entered against the property attributed to her owner-
ship by the foreclosure list, a judgment for the amount
mentioned in the list would be entered and a decree
would be granted to the county foreclosing its lien.
In short, the published notice subjected the property in
question to the court's jurisdiction and properly noti-
fied Lillian Morey of the impending disaster to her
property.

■■ Section 1-704, OCLA, says:

"The complaint shall contain: (1) The title of
the cause, specifying the name of the court, and the
names of the parties to the action, plaintiff and
defendant;   *   *   *."

Even when a suit or action is in personam, the omis-
sion of the complaint to contain the defendant's true
name does not render the subsequent decree or judg-
ment void, provided the summons contains his name:
*Walters v. Dock Commission,* 126 Or 487, 266 P 634,
270 P 778; *Foshier v. Narver,* 24 Or 441, 34 P 21; *Lind-
sey v. Delano,* 78 Ia 350, 43 NW 218; *Hammond v. The
People,* 32 Ill 446, 83 Am Dec 286; *Guinard v. Hey-
singer,* 15 Ill 288; *Pond v. Ennis,* 69 Ill 341; *Casper v.
Klippen,* 61 Minn 353, 63 NW 737; *Brun v. Ivins,* 154
Cal 17, 96 P 876. Accordingly, we conclude that the
error made in the caption of the application for judg-
ment and decree whereby Lillian Morey's name ap-
peared as Lillian Morey Rhodes did not render the
foreclosure decree void.

We believe that there is another reason, more far-
reaching in its general consequences, which demands
that the error in the captions of (a) the application for
judgment and decree, (b) motion for order of default;
(c) order of default, and (d) judgment and decree
was not fatal to the challenged decree.

■ We have pointed out that no individual is a party defendant in a tax foreclosure suit. Only the property purportedly tax delinquent is a party defendant. It will be recalled that § 110-905, OCLA, says that the suit is "a proceeeding in rem against the property itself". The property is, therefore, the party defendant. Accordingly, neither Lillian Morey nor any other person was a party to the tax foreclosure suit under scrutiny. The omission of her name or that of any other person from the caption was not a violation of any rule of procedure. To avoid being misunderstood, we repeat, Lillian Morey's name was entered properly in (1) the foreclosure list; (2) the published notice; (3) the certified copy of the foreclosure list which was filed in the foreclosure suit; (4) the copy of the foreclosure list which was made a part of the application for judgment and decree; and (5) the copy of the foreclosure list which was made a part of the judgment and decree. All of those papers described the property in a manner which has provoked no criticism.

■ In making the statement contained in the last paragraph, we do not mean to imply that the owner of the property, purportedly tax delinquent, is unimportant and that he may be ignored in the foreclosure proceedings. It is obvious that the draftsmen of the statutory provisions which we have been reviewing were much concerned with the owner. Had those draftsmen thought that only the property was affected by the tax foreclosure, they very likely would have made no provision whatever for the published notice, for, obviously, the inanimate property cannot read the notice; the latter is for the benefit of the owner. Since the draftsmen were concerned with the owner, their legislation made provision for the inclusion of the owner's name in virtually every paper that becomes a part of the fore-

closure file, such as the foreclosure list, the published notice and the application for judgment and decree. The sufficiency of the notice to meet the demands of due process of law has not been questioned. The legislation does not require that the owner's name shall appear in the caption as defendant or in any other capacity and, therefore, we conclude that when Lillian Morey's name was omitted from the caption borne by the application for judgment and decree, no error was committed. We add that in all likelihood a caption should be entered upon the papers filed in tax foreclosure proceedings, for, normally, captions facilitate the disposition of judicial business.

The court of our sister state to the north, from which our original legislation upon the subject of tax collection emigrated to our law books, has repeatedly taken the position which we just stated. A good summary of its holdings is stated in an extensive annotation in 169 ALR at 699-700:

"The requirements as to notice differ where, instead of foreclosure by an individual who has acquired a certificate of tax delinquency, a general foreclosure action is brought by the county under the statute which, although reciting that 'the same proceedings shall be had as when an individual' also provides that 'summons may be served or notice given exclusively by publication in one general notice, describing the property as the same is described on the tax roles,' and that 'the proceedings to foreclose the liens against said property may be brought in one action and all persons interested in any of the property involved in said proceedings may be made codefendants in said action, and if unknown may be therein named as unknown owners, and the publication of such notice shall be sufficient service thereof on all persons interested in the property described therein. The names of the per-

son or persons appearing on the treasurer's rolls as the owner or owners of said property for the purpose of this act shall be considered and treated as the owner or owners of said property, and if upon said treasurer's rolls it appears that the owner or owners of said property shall be proceeded against, as belonging to an unknown owner or owners as the case may be, and all persons owning or claiming to own, or having or claiming to have an interest therein, are hereby required to take notice of said proceedings and of any and all steps thereunder.' Thus, it has been repeatedly held under this statute that since a general tax foreclosure by a county is a proceeding in rem, it is not rendered void because the names of the owners are not listed in the publication of the notice or summons, or that they are listed incorrectly—in other words, that the owners are not entitled to be specifically named in the notice of such proceedings. Tacoma Gas & E. L. Co. v. Pauley (1908) 49 Wash. 562, 95 P. 1103; Noble v. Aune (1908) 50 Wash. 73, 96 P. 688; Patterson v. Toler (1913) 71 Wash. 535, 129 P. 107; Continental Distributing Co. v. Smith (1913) 74 Wash. 10, 132 P. 631; Merges v. Adams (1926) 137 Wash. 208, 242 P. 43; McGuire v. Bean (1929) 151 Wash. 474, 276 P. 555.

"As stated in Noble v. Aune (1908) 50 Wash. 73, 96 P. 688: 'Where a county prosecutes a general foreclosure, it is immaterial what name or names are used in the summons, or whether any is used. The summons is sufficient, in the absence of fraud, if the property is properly described. * * *'"

■ We hold that the failure to have included the name of Lillian Morey in the caption of (a) application for judgment and decree, (b) motion for order of default, (c) order of default, and (d) decree did not render the decree void nor subject to collateral attack.

■ We come now to the contention of the defendant-appellant Rhodes that the transaction of December 8,

1944, which we have fully described, was a conveyance and not a redemption. We think that it is clear that Rhodes' averment that the name of Jack Lannon, who was the sole heir of his mother, was included in the resolution and so-called deed through mutual mistake is wholly lacking in foundation. No mistake was proved. The deed is free from infirmaties of that nature.

It will be recalled that Rhodes claims that the deed just mentioned had its origin in the 1943 statute, which is quoted in a preceding paragraph. He argues that the transaction of December 8, 1944, called for a conveyance, or sale, and not for a redemption. We do not believe that it is necessary for us to determine whether Rhodes' transaction with the county court of Linn county should be deemed a purchase or a redemption. We express no opinion upon that phase of this case. The part of the 1943 act upon which Rhodes depends empowered the county court "to sell and convey by deed * * * to the record owner or to his assigns * * *." It authorized conveyances to no other person. We quoted in a preceding paragraph the sole basis of Rhodes' contention that he became the assign of his wife. We are satisfied that the basis which he submitted fails him, and that it does not suffice to show that he became the assign of his wife, or the assignee of this timber tract, if we may use the term in that manner. If it is essential for us to cite authority in support of that conclusion, it can readily be done. We mention at random the Statute of Frauds, for Rhodes has no writing of any kind. Thus, it is clear that he was neither a record owner nor an assign when the deed was written. The county court had authority to convey only to record owners and assigns. Since Rhodes was neither, the court lacked jurisdiction to insert his name in the challenged deed. The court, however, had authority to

deem Lannon as record owner and place his name in the deed. The deed is valid as to him. The plaintiff Harriman has not challenged the part of the decree which subjected the conveyance of Lannon to him (Harriman) to Rhodes' curtesy right, and, hence, that provision of the decree will remain unchanged.

The above disposes of all issues that require attention. The cause is remanded to the circuit court so that it may enter the proper decree. Costs and disbursements will not be allowed.

Affirmed.